**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BRYAN JACOBS, | : | |
| | : | Civ. Action No. 15-3661 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION (REDACTED)** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**BUMB**, United States District Judge

This matter comes before the Court on Petitioner Bryan Jacobs' ("Jacobs") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ("2255 Mot.," ECF No. 1.) Jacobs alleged six grounds for relief from his conviction and sentence. The Government filed an opposition brief. (Brief of the United States in Opposition to Bryan Jacobs' Motion to Vacate, Set Aside, or Correct his Sentence Under 28 U.S.C. § 2255, "Gov't Brief", ECF No. 19.) Jacobs filed a reply. (Response of Bryan Jacobs to the United States Brief In Opposition to Bryan Jacobs' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. ("Reply Brief," ECF No. 32.) For the reasons discussed below, the § 2255 motion is denied.

I.   BACKGROUND

On April 24, 2013, Jacobs was charged in a ten-count Superseding Indictment with the following: (a) five counts of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a); (b) four counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1); and (c) one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Superseding Indictment, ECF No. 41.) After jury selection began, Jacobs pled guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2). Id. (Minute Entry, ECF Nos. 74, 75; Plea Agreement, ECF No. 76.) In exchange for his plea, the United States dismissed nine additional charges including:   five counts of manufacturing child pornography, three counts of receipt of child pornography, and one count of possession. Id. (Plea Agreement, ECF No. 76.)

Jacobs' plea came about in the following manner.  During trial preparation in September 2013, the Government requested that the Court conduct an inquiry under Missouri v. Frye, 566 U.S. 134 (2012), to ensure that Jacobs' counsel had fully informed him of the many plea offers. Id. (Motions in Limine, ECF Nos. 53-1 at 37-39; 62-1 at 56-58; Minute Entry, ECF No. 72.) Jacobs responded that he had always been willing and remained willing to accept the plea offer of October 12, 2011. United States v. Jacobs,

10cr801(RMB) (D.N.J.) (Def. Opp. to Govt's Motions in Limine, ECF No. 66 at 8.)

The factual stipulations included in the October 12, 2011 Plea Agreement were included verbatim in the October 1, 2013 Plea Agreement. (Gov't Brief Exhibits, October 12, 2011 Plea Agreement, ECF No. 28-3; October 1, 2013 Plea Agreement, ECF No. 28-4.)

The Probation Department prepared a Presentence Report ("PSR") and determined Jacobs had an offense level of 41, and criminal history category of I, with an advisory guidelines range of 324 to 405 months imprisonment, capped at a statutory maximum of 240 months. (Gov't Brief, ECF No. 19 at 10.) At first, Jacobs objected to five upward sentencing adjustments, including three he stipulated to in the Plea Agreement. (Id. at 11.) In his sentencing memorandum, however, Jacobs withdrew all but two factual objections to the PSR and stated he had no legal objections. (Id.)

The sentencing hearing was held on May 28, 2014, and the Court adopted the PSR and found a Guidelines range of 324 to 405 months, subject to a 240-month statutory maximum. United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Sentencing Tr., ECF Nos. 91, 92.) Jacobs requested a downward variance and the Government requested the statutory maximum sentence of 240 months. (Id.)

This Court considered the factors under U.S.C. § 3553(a) and declined to grant Jacobs a variance. (Id.) The Court imposed a Guidelines range sentence of a 240-month period of imprisonment in

light of the very serious nature of the offense and immeasurable emotional trauma imposed on the victims, with a fifteen-year term of supervised release. <u>United States v. Jacobs</u>, 10cr801(RMB) (D.N.J.) (Sentencing Tr., ECF No. 92 at 180-198.) After a hearing on August 7, 2014, the Court also imposed restitution of $75,000. <u>Id.</u> (Opinion and Order, ECF Nos. 99, 100.)

On appeal, Jacobs argued that his sentence and the amount of restitution were unreasonable. <u>U.S. v. Jacobs</u>, 609 F. App'x 83, 85 (3d Cir. 2015). Jacobs contended the Court made two procedural sentencing errors: (1) miscalculating the Guidelines range by including inapplicable enhancements; and (2) failing to consider his arguments in favor of a lesser sentence under the § 3553(a) factors. (<u>Id.</u> at 85-86.) The Third Circuit held that Jacobs waived his Guidelines calculation challenges to the following: (1) a two-level enhancement under U.S.S.G. § 2G2.2(b)(2), for images involving a prepubescent minor or a minor less than 12 years old; (2) a six-level enhancement under § 2G2.2(b)(3)(D), for distributing images to a minor to induce the minor to engage in illegal activity; and (3) a four-level enhancement under § 2G2.2(b)(4), for images that portrayed sadistic or masochistic conduct. <u>Id.</u> at 86. Although Jacobs initially objected to the enhancements in the PSR, he dropped the objections in his sentencing memorandum. <u>Id.</u>

The Third Circuit explained:

> Jacobs suggests that he did not pursue these
> objections because the United States
> "threat[ened]" that Jacobs would lose credit
> for acceptance of responsibility and that the
> United States might withdraw from the plea
> agreement. Appellant's Br. at 37. With respect
> to the enhancements Jacobs now argues were
> incorrect, the United States only made this
> "threat" with respect to Jacobs's objection to
> the § 2G2.2(b)(3)(D) enhancement. Presentence
> Report at 40–41. The United States's "threat"
> was that Jacobs had stipulated that this
> enhancement would apply in the plea agreement;
> objecting to the enhancement could be
> construed as breaching the plea agreement,
> allowing the United States to withdraw from
> it, or as Jacobs's failure to accept
> responsibility for the offense. *Id.* Given that
> the United States's position is supported by
> the plea agreement, App. at 97, we see no basis
> to excuse Jacobs's waiver.

Jacobs, 609 F. App'x at 86, n. 8.

The Third Circuit also held that the District Court, in evaluating the § 3553(a) factors, meaningfully considered the arguments Jacobs raised, and Jacobs merely disagreed with the substantive reasonableness of the sentence. Id. Jacobs' sentence was substantively reasonable because he accumulated a large library of child pornography, defrauded and extorted minors into creating child pornography of themselves, and his conduct had a serious impact on his victims. Id. at 86-87.

Jacobs presented the following grounds for relief, quoted verbatim, in his § 2255 motion:

> • Ground One: Court violated defendant's 6th Amendment
> right to effective assistance of counsel;

- **Ground Two:** Ineffective Assistance of Counsel [eight subparts];

- **Ground Three:** Actual Innocence of Count of Conviction;

- **Ground Four:** Plea not entered into knowingly nor voluntarily;

- **Ground Five:** Prosecution breached plea agreement;

- **Ground Six:** Court improperly applied enhancement to guidelines that were not based on relevant conduct

## II. STANDARD OF REVIEW

A prisoner in custody pursuant to a federal court judgment and conviction may move the court that imposed the sentence to vacate, set aside or correct the sentence, if the sentence was imposed in violation of the Constitution or laws of the United States; or if the court was without jurisdiction to impose such sentence; or if the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." U.S. v. Tolliver, 800 F.3d 138 (3d Cir. 2015) (quoting United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)). "The district court is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not

entitled to relief.'" <u>U.S. v. Lilly</u>, 536 F.3d 190, 195 (3d Cir. 2005) (quoting <u>Booth</u>, 432 F.3d at 545.) For the reasons discussed below, the records of the case conclusively show that Jacobs is not entitled to relief, and the Court will not hold an evidentiary hearing in this matter.

Jacobs raises constitutional claims based on ineffective assistance of counsel. An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning "as counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).

Furthermore, the first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" <u>Lafler v. Cooper</u>, 132 S.Ct. 1376, 1384 (2012) (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Strickland</u>, 466 U.S. at 689 (quoting <u>Michel v.</u>

*Louisiana*, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986); *Strickland*, 466 U.S. at 689; *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The second prong of the *Strickland* test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. *Id.* at 696. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Collins v. Sec. of Pennsylvania Dept. of Corr.*, 742 F.3d 528, 547 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "Prejudice is viewed in light of the totality of the evidence at trial…." *Id.* (citing *Rolan v. Vaugh*, 445 F.3d 671, 682 (3d. Cir. 2006)). A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

III. DISCUSSION

   A. Ground One

For his first ground for relief, Jacobs complains that on September 18, 2013, the court denied his request for appointment of new trial counsel and forced him to proceed with ineffective counsel after he declined the alternative of representing himself. (2255 Mot., ECF No. 1 at 4.) The Government opposes relief, noting that twelve days before trial the court held a hearing on Jacobs' request for new counsel, and Attorney Levin, whom Jacobs sought to dismiss, was Jacobs' fourth attorney. (Gov't Brief, ECF No. 19 at 18-20.)

In reply, Jacobs asserts his trial counsel, Mr. Levin, did not have a sound trial strategy because: (1) he did not follow up on IP address data to show Jacobs' involvement in child pornography did not begin until November 29, 2008; (2) he did not pursue certain dates when Jacobs could not possibly have logged on to a computer, according to the IP address data; (3) he did not subpoena the witness known as "GreekPatch43" to refute the distribution sentence enhancement; (4) he did not hire a "child porn expert" to determine if the images were child pornography; (5) an email from the prosecution to an investigator said not to worry because Mr. Levin said he would get the defendant to take a plea. (Reply Brief, ECF No. 32 at 4-5.)

When a court is faced with a request for appointment of new counsel on the eve of trial, it must determine whether the defendant's reasons for the request constitute good cause to

justify continuance of the trial. United States v. Welty, 674 F.2d 187 (3d Cir. 1982). Examples of good cause to delay trial for substitution of defense counsel include a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict between attorney and client. Id. at 188 (citing McKee v. Harris, 649 F.2d 927, 931 (2d Cir. 1981); United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972), cert. denied, 410 U.S. 926 (1973)); U.S. v. Goldberg, 67 F.3d 1092, 1098 (3d Cir. 1995)(same).

There are countervailing governmental interests that are relevant factors to the "good cause" analysis. Goldberg, 67 F.3d at 1098. These interests include the efficient administration of criminal justice; the accused's opportunity to prepare a defense; the rights of other defendants awaiting trial who may be prejudiced by a continuance; and whether the request is made in bad faith, for purposes of delay, or to subvert judicial proceedings. Id. (citations omitted). "If the district court denies the request to substitute counsel and the defendant decides to proceed with unwanted counsel" there is no "Sixth Amendment violation unless the district court's 'good cause' determination was clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel." Id.

If the court denies a continuance for the defendant to obtain new counsel, the defendant must choose to continue with existing counsel or represent himself. Welty, 674 F.2d at 187. This raises

the possibility of waiving the Sixth Amendment right to counsel. Welty, 674 F.2d at 187. Thus, the court must ensure that the defendant's decision to represent himself is intelligently and competently waived. Id. (citing Johnson v. Zerbst, 304 U.S. 458, 465 (1938)).

Following a hearing, the Court found Jacobs did not show good cause to substitute counsel on the eve of trial. United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Hearing Tr., ECF No. 78.) Most of Jacobs' complaints about counsel were disagreements on strategy, which are issues for counsel to decide. (Id. at 19.) Jacobs also complained that counsel had an amicable relationship with the prosecutors and did not seek permission from Jacobs before discussing issues with the prosecution, but the Court noted civility and communication between counsel is encouraged, especially when discussions might lead to a plea offer. (Id. at 19-20.)

Mr. Levin said he would be ready for trial, and his work on the case up to that point suggested this was true. (Id. at 20.) Jacobs also complained about lack of communication, but Jacobs had recently refused to meet with Levin. (Id.) Finally, the case had been vigorously litigated over a course of years. (Id. at 61.) The defense hired an expert who had engaged in forensic analysis for years. (Id.) Another delay would prejudice the administration of justice. (Id.)

In sum, Jacobs stated that he did not wish to proceed with Mr. Levin as counsel. <u>United States v. Jacobs</u>, 10cr801(RMB) (D.N.J.) (Hearing Tr., ECF No. 78 at 4.) However, Jacobs also refused to voluntarily waive his right to counsel, stating instead that the court was forcing him to do so. (<u>Id.</u> at 22-64.) Therefore, the Court determined that Mr. Levin would proceed as trial counsel. The good cause analysis was thorough and met the requirements described in <u>Welty</u> and <u>Goldberg</u>. Ground One of the motion is denied.

B. <u>Ground Two</u>

In Ground Two of his motion, Jacobs alleged eight instances of ineffective assistance of counsel: (1) failure to inform defendant that he could have the court reconsider the September 18, 2013 motion; (2) counsel misinformed defendant that the plea offer of October 1, 2013 is much better than the "C" plea that was also available; (3) counsel failed to review the elements of the crime or compare the images to the <u>Dost</u> factors before telling defendant to take the plea; (4) counsel erroneously advised defendant that he could argue against the distribution stipulation in the Plea Agreement a later time; (5) counsel failed to inform defendant that the court could add sentence enhancements that were not stipulated in the Plea Agreement; (6) counsel failed to inform defendant, after receipt of the PSR, that defendant had the right to withdraw the plea before sentencing; (7) counsel misunderstood

the prosecution's threat regarding defendant's objections to the PSR and erroneously withdrew the objections due to the threat; (8) at sentencing, counsel failed to argue against enhancements that were not based on relevant conduct. (2255 Mot., ECF No. 1 at 5-6.)

### 1. Failure to inform Jacobs that he could seek reconsideration of the September 18, 2013 motion for appointment of new counsel

Jacobs asserts his counsel was ineffective by not advising him that he could seek reconsideration of the court's denial of his September 18, 2013 request for appointment of new counsel. (2255 Mot., ECF No. 1 at 5.) The Government contends Jacobs cannot show Strickland prejudice because a motion for reconsideration was unlikely to succeed, and defense counsel's time was better spent preparing for trial. (Gov't Brief, ECF No. 19 at 31.) In reply, Jacobs asserts his counsel should have told him of his right to request reconsideration after his plea was accepted on October 1, 2013, because it was no longer a factor in the court's decision that it was the "eve of trial." (Reply Brief, ECF No. 32 at 9.)

Jacobs has not shown that prejudice resulted from counsel's failure to advise him that he could seek reconsideration of the denial of his motion for appointment of new counsel. The Court carefully considered Jacobs' reasons for his request and did not find good cause to appoint a fifth attorney to represent Jacobs. A motion for reconsideration would have been denied.

Moreover, if Jacobs had new reasons to replace his counsel after he entered into the Plea Agreement, he could have brought a motion without asking for reconsideration of the earlier decision. The Court denies this claim of ineffective assistance of counsel.

   2.   Ineffective assistance by misinforming Jacobs that
        October 1, 2013 plea offer was better than the "C"
        plea

Jacobs contends his counsel was ineffective by telling him that the October 1, 2013 plea offer was better than the June 6, 2013 Rule 11(c)(1)(C) plea offer. (2255 Mot., ECF No. 1 at 5.) In response, the Government asserts counsel was not ineffective because the October 1, 2013 Plea Agreement that Jacobs accepted was the most favorable plea that was offered. (Gov't Brief, ECF No. 19 at 24.) The Government notes that the court conducted hearings pursuant to Missouri v. Frye,[1] for each plea offer made. (Id. at 24-25.) With the exception of the October 11, 2011 plea offer, which was in all material respects identical to the October 1, 2013 agreement that Jacobs accepted, all other plea offers required Jacobs to plead guilty to one or more counts of sexual exploitation of children in violation of 18 U.S.C. § 2251(a), which carried a 15-year mandatory minimum and 30-year statutory maximum sentence of imprisonment. (Id. at 25.)

---

[1] In Missouri v. Frye, the Supreme Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 566 U.S. 134, 145 (2012).

The October 1, 2013 plea offer was the only offer that permitted Jacobs to plead guilty to the lesser offense of receipt of child pornography in violation of 18 U.S.C. § 2252(A)(a)(2), which carried a 5-year mandatory minimum and a 20-year statutory maximum term of imprisonment. (Gov't Brief, ECF No. 19 at 25.)

The Government also maintains that Jacobs cannot establish prejudice because a trial would almost certainly have resulted in conviction on all of the offenses in the Superseding Indictment because the Government had evidence of hundreds of defendant's chats with minors, and evidence of his possession of sexually explicit photographs with 19 identified minor victims. (Id.) Jacobs was provided voluminous discovery, and the defense retained a computer forensic expert prior to his guilty plea. (Id.) If Jacobs had gone to trial on the Superseding Indictment, he would have faced up to 240 years imprisonment, the sum of the statutory maximum for each of the counts. (Id. at 26.)

Jacobs replied that the June 6, 2013 plea offer was more favorable to him because it carried a lower Guidelines range than the Guidelines range that resulted from his guilty plea. (Reply Brief, ECF No. 32 at 9.) Jacobs admits that the June 6, 2013 offer did not permit him to seek a sentence of less than 20 years, but the Court had discretion to sentence him within the lower Guidelines range for an offense level of 35. (Id.) In contrast, Jacobs argues that the October 1, 2013 plea offer he accepted

carried an offense level of 41, and a statutory maximum of 20 years imprisonment. (Reply Brief, ECF No. 32 at 9.)

Jacobs fails to acknowledge that, although he was sentenced to the statutory maximum of 20 years for receipt of child pornography, the October 1, 2013 plea offer was the only offer that permitted him to argue for a much lesser sentence. The Sentencing Guidelines were advisory when Jacobs pled guilty, and the Court had discretion to sentence Jacobs under the Guidelines range under either plea offer, but he was not permitted to seek less than 20 years under the June 6, 2013 offer. See Gall v. United States, 552 U.S. 38, 46 (2007) (the Supreme Court made the Sentencing Guidelines advisory in United States v. Booker, 543 U.S. 220 (2005), but an appellate court may take the degree of variance from the Guidelines into account in assessing reasonableness of the sentence, under an abuse of discretion standard.) It was more favorable for Jacobs to be permitted to argue for less than a 20-year term of imprisonment. Therefore, counsel was not ineffective, and the Court denies this ground for relief.

> 3. Counsel failed to review the elements of the crime or to compare the images to the Dost factors before recommending acceptance of the plea offer

In support of this claim, Jacobs asserts that when he questioned his counsel whether the images relevant to Count 6 of the Superseding Indictment were "child porn," counsel responded

only that they probably were. (2255 Mot., ECF No. 1 at 5.) The Government argues that even if counsel did not discuss the elements of the crime or the Dost factors with Jacobs before he accepted the plea offer, there is no prejudice because the elements were described in the plea memorandum, and the plea colloquy indicated Jacobs was aware of the factual basis establishing the elements of the crime. (Gov't Brief, ECF No. 19 at 32-33.) Further, the Government asserts there was no prejudice because the images Jacobs received on November 30, 2008, Government Exhibits 211 and 212, meet the definition of "lascivious display of the genitals or pubic area" in light of the Dost factors. (Id. at 47.)

The relevant facts are as follows. Jacobs signed the Plea Agreement on October 1, 2013. United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Plea Agreement, ECF No. 76.)) The Plea Agreement contains stipulations that: (1) Jacobs received images that constitute child pornography, as defined in Title 18, United States Code, Section 2256(8); (2) the offense involved distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; (3) the offense involved a pattern of activity involving the sexual abuse or exploitation of a minor; (4) the offense involved a pattern of activity involving the sexual abuse or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with

intent to view the material; and (5) the offense involved at least 150 images, but fewer than 300. United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Plea Agreement, ECF No. 76 at 8.)

Jacobs also signed an "Application for Permission to Enter Plea of Guilty." United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Application, ECF No. 77.) In the application, Jacobs agreed that he was satisfied that he had enough time to discuss the plea with his lawyer; he read and discussed the Indictment with his lawyer and understood the charge against him for receipt of child pornography; he told his lawyer all the facts about the charges in the Indictment and was satisfied that his lawyer advised him on the nature of each charge and all the possible defenses; he understood if he pled guilty that the judge would ask him what he did, and he would have to acknowledge his guilt as charged by setting forth his actions so that the judge is satisfied that he is indeed guilty; and any statements he made when pleading guilty under oath, if untrue, could be the basis of a perjury prosecution against him. (Id.)

During the plea colloquy, the Court emphatically advised Jacobs to tell the Court if there was something he did not understand, and that he had a right to consult with his attorney at any time during the plea colloquy. Id. (Plea Colloquy, ECF No. 94 at 3.) Jacobs agreed that he read the charges in the Superseding Indictment and had time to discuss the Indictment, and his case in

18

general, with counsel. <u>United States v. Jacobs</u>, 10cr801(RMB)
(D.N.J.) (Plea Colloquy, ECF No. 94 at 4.) He agreed that he was
satisfied with Mr. Levin's representation and advice. (<u>Id.</u> at 5.)
He went over the Plea Agreement with Mr. Levin and had the
opportunity to ask any questions he had. (<u>Id.</u> at 6.) He agreed
that he accurately answered the questions on the Application for
Permission to Enter a Guilty Plea. (<u>Id.</u> at 7-8.) He agreed to plead
guilty to Count 6 of the Superseding Indictment, that he received
child pornography on November 30, 2008, in violation of 18 U.S.C.
§ 2252A(a)(2). (<u>Id.</u> at 14.)

Jacobs also stated that he knowingly received files
containing images of a minor engaged in sexually explicit conduct
on or about November 30, 2008. (<u>Id.</u> at 24.) He acknowledged that
those files contained images of child pornography as defined in 18
U. S.C. § 2256(8). (<u>Id.</u> at 24-25.) Jacobs identified the minor in
the images by the name he knew him by, and said that he knew the
images depicted a real person under the age of eighteen engaged in
sexually explicit conduct. (<u>Id.</u> at 25.) He admitted that he
downloaded the images from the Internet onto a computer media that
he owned, controlled and possessed. (<u>Id.</u>)

The Government described Exhibits 211 and 212:[2]

---

[2] It appears the Government concedes Exhibit 210 does not depict
"lascivious exhibition of the genitals or pubic area" under the
<u>Dost</u> factors.



(Gov't Brief, ECF No. 19 at 47.) The Government concludes the images of CV1 that Jacobs received on November 30, 2008 were child pornography. (Id. at 47, 49.)

Jacobs replied that his counsel did not know whether Government Exhibits 211 and 212 were pornography or not, and he could not have adequately advised Jacobs on the elements of the crime if he was unaware of the standard. (Reply Brief, ECF No. 32 at 10.) Jacobs further contends his counsel did not know the contents of the images; therefore, he could not know which stipulations or sentencing enhancements might be relevant. (Id. at 10-11.) Finally, in his actual innocence claim, Jacobs contests the Government's description of the images in Government Exhibits 211 and 212. (Id. at 16-17.)

First, the Court addresses Jacobs' claim that counsel failed to inform him of the elements of the crime to which he pled guilty. Jacobs pled guilty to receipt of child pornography in violation of

18 U.S.C. § 2252A(a)(2) (eff. December 7, 2012). <u>United States v.</u>

<u>Jacobs</u>, 10cr801(RMB) (D.N.J.) (Plea Agreement, ECF No. 76.)

Pursuant to 18 U.S.C. § 2256(8) (eff. Oct. 13, 2008):

> "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> > (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
> >
> > (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
> >
> > (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

Sexually explicit conduct is defined in 18 U.S.C. § 2256(2)(A)(v)(eff. Oct. 13, 2008) as "lascivious exhibition of the genitals or pubic area of any person."

The Third Circuit Court of Appeals adopted a six-factor test, known as the "<u>Dost</u> factors," to aid the trier of fact in determining the meaning of "lascivious exhibition of the genitals or pubic area."[3] The six factors are:

---

[3] <u>United States v. Villard</u>, 885 F.2d 117, 122 (3d Cir. 1989) (quoting <u>United States v. Dost</u>, 636 F.Supp. 828, 832 (S.D.Cal. 1986), <u>aff'd</u> <u>sub</u> <u>nom</u>, <u>United States v. Weigand</u>, 812 F.2d 1239 (9th Cir.), <u>cert.</u> <u>denied</u>, 484 U.S. 856 (1987)).

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Villard, 885 F.2d at 122.

Upon review of Government Exhibits 211 and 212, the Government's descriptions of the images are accurate and the images constitute lascivious exhibition of the genitals or pubic area under the Dost factors. Therefore, Jacobs cannot establish prejudice from counsel's alleged failure to view Government Exhibits 211 and 212 in light of the Dost factors before advising Jacobs to accept the guilty plea. If Jacobs had gone to trial, not only was he likely to be convicted on Count 6, but he would have been tried on eight additional counts, with potentially hundreds of pornographic images retrieved from his computer admitted into evidence.

"[I]n order to satisfy the 'prejudice' requirement" of the Strickland test in the context of ineffective assistance in the plea process, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Here, where the written plea agreement, the Application for Permission to Enter Plea of Guilty, and the plea colloquy cured any deficiency in counsel's advice regarding the elements of the crime and the factual basis satisfying those elements, there is no reasonable probability that Jacobs would have insisted on going to trial where his sentencing exposure was a 240 years on all nine counts, in contrast to the 5-year mandatory minimum and 20-year mandatory maximum he faced under the guilty plea to Count 6. This claim of ineffective assistance of counsel in the plea process is denied.

4. Counsel was ineffective by telling Jacobs he could argue against the ambiguous distribution stipulation in the Plea Agreement at a later time and then he withdrew Jacobs' objection to the stipulation without his consent

Jacobs contends his counsel erroneously informed him that he could challenge the distribution stipulation in the Plea Agreement at a later time. (2255 Mot., ECF No. 1 at 5.) The Government responds to this claim by arguing that even if this allegation were true, there was no prejudice because the distribution stipulation was factually correct. (Gov't Brief, ECF No. 19 at

35.) The Government's evidence indicated that Jacobs used child pornography with the intent to induce and coerce minors to produce additional child pornography. (Gov't Brief, ECF No. 19 at 35, citing PSR at ¶¶11-14 and pp. 40-41; A256, 277, 287-92, 312-13; SA3-6.)

The Government also argues that Jacobs was not prejudiced by entering into a plea agreement that contained the distribution stipulation, which resulted in a sentence enhancement. (Id. at 35-36.) Jacobs was aware the court could sentence him to the 20-year statutory maximum, and without the plea, he faced a maximum of 240 years if convicted on all counts in the Superseding Indictment. (Id.)

Jacobs replied that the distribution stipulation was untrue because during the November 30, 2008 "chat" between himself and a minor, Jacobs did not send any pictures or post any child pornography on any website, Russian or otherwise. (Reply Brief, ECF No. 32 at 11.)

The distribution stipulations in the Plea Agreement provide:

> b. Bryan A. Jacobs' offense involved distribution to a minor that was intended to persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct.

> d. Bryan A. Jacobs' offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt or distribution of the material, or

> for accessing with intent to review the
> material.

United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Plea Agreement, ECF No. 76.)

Paragraphs 11-14 of the PSR describe the background of the offense relevant to the distribution stipulation:







engaged in sexually explicit c___ct.

(Gov't Brief, Exhibit, PSR, ECF No. 28-1.)

The Court concludes that the distribution stipulation was not ambiguous and it was supported by the factual record. Even if counsel erroneously told Jacobs he could argue against the stipulation he made in the Plea Agreement later, there was no

prejudice because his argument would have failed. The Court denies this ineffective assistance of counsel claim.

### 5. Ineffective assistance claims related to sentence enhancements that were not stipulated to in the Plea Agreement; and Ground Five alleging the prosecution breached the Plea Agreement

In response to these claims, the Government assumes Jacobs is referring to the sentence adjustments for prepubescent minors, U.S.S.G. § 2G2.2(b)(2), and sadistic or masochistic images, U.S.S.G. § 2G2.2(b)(4), to which Jacobs did not stipulate. (Gov't Brief, ECF No. 19 at 37.) The Government contends these claims are contradicted by the Plea Agreement and the plea colloquy, and Jacobs cannot establish prejudice because he agreed that the court was not bound by the stipulations and was empowered to "make independent factual findings." (Id. at 37-38.)

In reply, Jacobs asserts that he accepted the plea offer based solely on the stipulations in the Plea Agreement, and he would not have taken the plea if it had more stipulations. (Reply Brief, ECF No. 32 at 13.) He contends that when the PSR included facts in support of additional sentence enhancements not in the Plea Agreement, his counsel failed to inform him that he could withdraw his plea prior to sentencing. (Id. at 14.) Jacobs argues the Government did not uphold its end of the bargain because it argued for additional sentence enhancements not in the Plea Agreement, and but for counsel's error in failing to inform him he could

withdraw the plea, he would have gone to trial. (Reply Brief, ECF No. 32 at 14.)

The Plea Agreement and Application for Permission To Enter Guilty Plea indicate Jacobs was informed of and agreed: (1) that the sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine (Plea Agreement, ECF No. 76 at 2); (2) the prosecution—

> reserve[d] its right to take any position with respect to the appropriate sentence to be imposed on Bryan A. Jacobs by the sentencing judge, to correct any misstatements relating to the sentencing proceedings, and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. In addition, this Office may inform the sentencing judge and the United States Probation Office of (1) this agreement; and (2) the full nature and extent of Bryan A. Jacobs' activities and relevant conduct with respect to this case

(Id. at 4); (3) the agreement to stipulate —

> does not bind the sentencing judge, who may make independent factual findings and may reject any or all of the stipulations entered into by the parties. To the extent that parties do not stipulate to a particular fact or legal conclusion, each reserves the right to argue the existence of and the effect of any such fact or conclusion upon the sentence…

(Id.); and (4)

> I understand that the Court will not be able to determine the sentence for my case until after the Presentence Report has been

> completed and both I and the Government have
> had an opportunity to read the report and
> challenge any facts reported by the probation
> officer.

(Application for Permission to Enter Guilty Plea, ECF No. 77, ¶29.)

The plea colloquy further establishes that (1) Jacobs said he had the opportunity to ask his counsel any questions he had about the Plea Agreement; (2) Jacobs understood that the stipulations in the Plea Agreement did not bind the sentencing court; (3) Jacobs understood the sentencing court would be obligated to calculate the Guidelines sentencing range, *consider any possible departures*, and the sentencing factors under 18 U.S.C. § 3553(a); (4) Jacobs understood the Probation Office would prepare a presentence report and come up with an adjusted offense level that would take into account whether there were any adjustments to the offense level; (5) that it was impossible for his counsel or the court to know precisely what the Guidelines range would be before the presentence report was completed; and (6) the court might have to hold a hearing to determine facts that would affect the advisory Guidelines range. United States v. Jacobs, 10cr801(RMB) (D.N.J.) (Plea Colloquy, ECF No. 94.)

Thus, the records of the plea process refute Jacobs' assertions that he accepted the plea offer based solely on the stipulations in the Plea Agreement, and that he would not have taken the plea otherwise. Jacobs was fully informed during the

plea colloquy that the Probation Office could present facts in support of additional sentence enhancements, and he was informed by the terms of the Plea Agreement that the Government could provide the Probation Office with such facts and make arguments in support of additional sentence enhancements, just as Jacobs could argue for a lower sentence. Therefore, Jacobs was not prejudiced by his counsel's alleged failure to inform him there could be additional enhancements in the PSR and at sentencing.

The Court denies the ineffective assistance of counsel claims related to the sentence enhancements that were not stipulated to in the Plea Agreement. The Court also denies Ground Five, where Jacobs alleges that the prosecution breached the Plea Agreement by arguing the existence of facts and legal conclusions that were not stipulated to by the parties in the Plea Agreement. The Plea Agreement expressly reserved the right of both parties to argue the existence of facts and legal conclusions that were not stipulated by the parties.

C.    Ground Three

For his third ground for relief, Jacobs claims he is actually innocent because Count 6, to which he pled guilty, was based on his receipt of three images that were First Amendment expressions and not pornography. (2255 Mot, ECF No. 1 at 7.) Referring to Government Exhibits 210, 211 and 212, Jacobs asserts that under the Dost factors: (1) the focal point of the images is not on the

genital or pubic area; (2) the setting is not sexually suggestive; (3) CV1 is standing in a natural pose; (4) CV1 is partially clothed in a bathing suit; (5) the visual depictions do not suggest sexual coyness nor willingness to engage in sexual activity; and (6) the visual depictions are not intended to elicit a sexual response in the viewer. (Id.)

The Government maintains that the evidence supporting Count 6 refutes Jacobs' actual innocence claim. (Gov't Brief, ECF No. 19 at 44.) The Government refers to a November 30, 2008 chat log

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

The Government also points to three photographs of CV1, marked for trial as Exhibits 210-212, which were taken by CV1 at Jacobs' direction and sent to him during the November 30, 2008 chat, described in Section III(B)(4) above. (Id. at 47.)

"The Supreme Court has yet to decide whether a prisoner can obtain habeas relief based on a freestanding claim of actual innocence, having left the matter open time and again." Bruce v. Warden Lewisburg USP, 868 F.3d 170, 183 (3d Cir. 2017) (citations omitted). Assuming there is a freestanding actual innocence habeas claim, such a claim would require "more convincing proof of

innocence" than that needed to meet the gateway standard for excusing a procedural default). <u>Bruce</u>, 868 F.3d at 184.

The gateway standard of actual innocence is that "a petitioner must 'demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" <u>Id.</u> (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (internal quotation marks omitted)). "The Government 'is not limited to the existing record to rebut any showing that [the] petitioner may make.'" <u>Id.</u> (quoting <u>Bousley</u>, 523 U.S. at 623-24.))

Upon the Court's review of the chat log and images related to Count 6, Jacobs failed to prove that in light of all the evidence it is more likely than not that no reasonable juror would have convicted him on Count 6. Jacobs' actual innocence claim is denied.

D.    <u>Ground Four</u>

In Ground Four, Jacobs alleges his plea was not entered into knowingly and voluntarily. (2255 Mot., ECF No. 1 at 8.) Ground Four is based on the combination of errors alleged by Jacobs in his other grounds for relief. (<u>Id.</u>) The Court denies Ground Four because the Plea Agreement, Application for Permission to Enter Guilty Plea, and plea colloquy indicate Jacobs' plea was knowing and voluntary. The Court has addressed Jacobs' individual claims above.

E.    Ground Six

For his sixth ground for relief, Jacobs alleges the court improperly applied enhancements to Guidelines that were not based on relevant conduct. (2255 Mot., ECF No. 1 at 11.) In Ground Two, Jacobs also contends his counsel was ineffective for failing to object to the sentence enhancements in the PSR. (Id. at 6.) Jacobs refers to enhancements under U.S.S.G. §§ 2G2.2(b)(2), (3), (4); and 2G2.2(b)(3)(D). (2255 Mot., ECF No. 1 at 11.) He asserts that CV1 was over the age of 13 during all alleged conduct; no other minors' images were used in the commission of the offense of conviction; the images do not portray sadistic or masochistic conduct; there is no penetration in any of the images of CV1 and no such images were used in the offense of conviction; and the alleged distribution did not involve CV1 and was not part of the commission of the offense of conviction. (Id.)

The Government asserts that Jacobs misunderstands the scope of "relevant conduct" the sentencing court may consider under U.S.S.G. § 1B1.3; relevant conduct is not limited to the specific offense of conviction. (Gov't Brief, ECF No. 19 at 54-55.) Thus, the Government contends it was proper for the court to consider evidence that would have been admitted at trial relating to the other counts in the Superseding Indictment to which Jacobs did not plead guilty. (Id. at 55.)

Under U.S.S.G. § 1B1.3, "relevant conduct" refers to the factors that determine the Guidelines range for the offense conduct and adjustments. Relevant conduct includes "all acts and omissions committed ... that occurred during the commission of the offense of conviction, [or] in preparation for that offense ..." or "that were part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Sullivan, 414 F. App'x 477, 480 (3d Cir. 2011).

A comment to § 1B1.3 explains that "[w]hether conduct is part of the "same course of conduct" depends on "whether offenses are sufficiently connected or related to each other" as determined by such factors as the "degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." Sullivan, 414 F. App'x at 480 (quoting § 1B1.3 cmt. n. 9(B)). "[E]ven if one factor is absent, relevant conduct may be found where at least one other factor is strong." Id. (quoting United States v. Kulick, 629 F.3d 165, 171 (3d Cir. 2010) (quoting United States v. Wilson, 106 F.3d 1140, 1143 (3d Cir. 1997)).

At the sentencing hearing, the Court heard arguments from the parties concerning the final PSR. United States v. Jacobs, 10cr801(RMB) (Sentencing Tr., ECF No. 91 at 1-17.) The Court struck Paragraphs 29 and 35, and adopted the final PSR as modified. (Id. at 14-17.) The PSR indicated a Total Offense Level of 40, a

criminal history category of I, and a Guidelines range of 292-365 months imprisonment, limited by the statutory cap to 240-month term. United States v. Jacobs, 10cr801(RMB) (Sentencing Tr., ECF No. 91 at 17.)

The final PSR contained a two-level adjustment under § 2G2.2(b)(2) based on child pornography recovered at defendant's home, involving prepubescent minors under the age of twelve. (PSR, ECF No. 28-1, ¶57.) This adjustment was supported by evidence that CDs seized from Jacobs' home contained images of young boys engaged in sexually explicit conduct; and in one of the CDs, the images were saved in files that appeared to be labeled according to the age of the boys "9-13," "11-14," "13-16," and "16-18." (Id., ¶26.) Therefore, the Court properly adopted this adjustment for prepubescent minors as relevant conduct in Jacobs' common course of conduct in receipt of child pornography.

The final PSR contained a six-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(D), based on Jacobs conduct of inducing minors to send him sexually explicit pictures of themselves. (Govt. Brief, Exhibit, PSR, ECF No. 28-1, ¶58.) This enhancement is supported by evidence that Jacobs posed as a female to induce a thirteen-year-old boy to send sexually explicit pictures of himself, and that Jacobs threatened to share the pictures with the victim's friends if he did not send more pictures. (Id., ¶¶27, 30(b).) Therefore, the Court properly adopted this adjustment as

relevant conduct to the common scheme or plan of Jacob's offense of conviction.

The final PSR also contained a four-level enhancement under U.S.S.G. § 2G2.2(b)(4) because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. (Govt. Brief, Exhibit, PSR, ECF No. 28-1, ¶59.) This enhancement was supported by Jacobs' receipt of an image ███

████████████████████████████████████████████████████
The Court properly adopted this adjustment as part of the acts that occurred in the commission of the offense.

For these reasons, the Court denies Ground Six, and the allegation in Ground Two that counsel was ineffective by failing to argue against these sentence enhancements.

    F.    <u>Certificate of Appealability</u>

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district

36

court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

Based on the discussion above, reasonable jurists would not find it debatable that (1) the Court did not violate Jacobs' Sixth Amendment right to counsel by denying his request for new counsel on the eve of trial; (2) defense counsel did not provide ineffective assistance of counsel that prejudiced the defense; (3) Jacobs is not actually innocent of Count 6; (4) Jacobs entered into the plea knowingly and voluntarily; (5) the prosecution did not breach the Plea Agreement; and (6) and the Court properly applied sentence enhancements to the Guidelines based on relevant conduct.

IV. CONCLUSION

For the foregoing reasons, the motion to vacate, set aside, or correct the sentence (ECF No. 1) is DENIED, and the Court SHALL NOT ISSUE a certificate of appealability. An appropriate Order shall follow.

**Dated: May 1, 2018**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
